**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PEDRO URAGA, *on behalf of himself, FLSA Collective Plaintiffs and the Class*, <br><br>            Plaintiff, <br><br>    v. <br><br> AMICI 519 LLC d/b/a ESSEN, BNP NY FOODS, INC. d/b/a ESSEN, TEN WESTSIDE CORP. d/b/a ESSEN, 100 BROAD STREET LLC d/b/a ESSEN, ESSEN22 LLC d/b/a ESSEN, JOHN DOE CORP. d/b/a ESSEN, JOHN BYUN and CHONG WON BYUN, <br><br>            Defendants. | Case No.: 17-CV-3547 (ALC) <br><br> **MEMORANDUM OF LAW WITH RESPECT TO ONLY DEFENDANTS MADISON 27 CORP., TEN WESTSIDE CORP., MYONG BYUN, JOSEPHINE KIM, YOUNG CHOI, WILLIAM BYUN, and KYEONG T. HWANG** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS,**
**FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**
**AND APPROVAL OF THE FLSA SETTLEMENT**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .....................................1

  I. Procedural History ...............................................................................1

  II. Overview of Investigation and Discovery ...........................................2

  III. Settlement Negotiations, Further Discovery & Preliminary Approval ..................4

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION ..................5

ARGUMENT ...........................................................................................7

  I. The Settlement Class Meets the Legal Standard for Class Certification ..................7

    A. Numerosity...................................................................................8

    B. Commonality................................................................................8

    C. Typicality ...................................................................................9

    D. Adequacy of the Named Plaintiff ................................................10

    E. Certification Is Proper Under Rule 23(b)(3) ..................................11

      1. Common Questions Predominate ...............................................11

      2. A Class Action Is a Superior Mechanism ...................................12

  II. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects .....................................................13

    A. The Proposed Settlement Is Substantively Fair ..............................14

      1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) .....................................................15

      2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) .............15

      3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3) ......................................16

i

4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ...................................................................................................17

5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) .......................................................................18

6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) .......................................................................................................18

7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...................19

B. The Proposed Settlement is Procedurally Fair ..................................................20

1. The Settlement Was the Result of Arm's Length Negotiations.................20

2. The Distribution of Class Notice Satisfied Due Process ...........................22

III. Approval of the FLSA Settlement Is Appropriate Under Federal Law ...............24

CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*In re Agent Orange Product Liability Litigation MDL No. 381,*
818 F.2d  145 (2d. Cir. 1987)..............................................................................................23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)................................................11, 13

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) .......24

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...............................................................15, 16, 17, 18

*Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640
N.Y.S.2d 845, 847 (1996)....................................................................................................22

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969)............................................................22

*Cagan v. Anchor Sav. Bank FSB,*
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ........................................19

*Campos v. Goode,*
No. 10 Civ. 224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) .....................................11

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974).................................................................................................14

*Clark v. Ecolab, Inc.*,
Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009
WL 6615729 (S.D.N.Y. November 27, 2009) .......................................................9, 10, 12

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ............................8

*In re Cendant Corp. Litig.*, 264 F .3d 243, 263  ...................................................... passim

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)......................................13, 14, 20

*deMunecas v. Bold Food, LLC*,
No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ..........................11, 20, 21

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006)...............................................7

*Diaz v. E. Locating Serv., Inc.*,
No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .................11, 13, 17, 20

iii

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011).........9, 10

*Dziennik v. Sealift, Inc.*,
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007) ....................................11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................20

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ..........8, 9, 10, 12, 13, 17

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .........................................................8

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .....................................20

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).....................................14

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) ...................................................12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...............................................13

*Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).................................................24

*In re Ira Haupt & Co.,* 304 F. Supp. 917 (S.D.N.Y. 1969) ...............................................17

*In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008)............21

*In re Prudential Securities, Inc.,* 164 F.R.D. 362 (S.D.N.Y 1996)....................................22

*In re Colt Indus.,* 155 A.D.2d 154, 553 N.Y.S.2d 154 (1st Dep't 1990)...........................23

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391 (S.D.N.Y. 1986) .............9

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ....................24

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................15

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................................8, 9, 17

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) ...........................16

*McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005) .......................................12

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) .................................24

iv

*McMahon v. Olivier Cheng Catering & Events, LLC*,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...............................10, 11

*Newman v. Stein*, 464 F .2d 689, 693 (2d Cir. 1972) ......................................................20

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ......................19

*In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y. 1997) ........................17

*Parker v. Time Warner Entertainment Company*, 239 F.R.D. 318 (E.D.N.Y. 2007)........22

*Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486-87 (D.C.Cir.1992).........23

*Prasker v. Asia Five Eight LLC*,
No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ..........................................17

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................................8

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
No. 94 Civ. 5587. 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ..................................15

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993).............................................................10

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) .......................................11

*Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir.1994)........................................................23

*Spann v. AOL Time Warner, Inc.*,
No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) .......................................14

*In re Top Tankers, Inc. Sec. Litig*.,
No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ...................................21

*Torres v. Gristede's Corp.*,
No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. September 29, 2006) ...........................12

*Toure v. Cent. Parking Sys.*,
No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ....................................10

*Trist v. First Federal Savings & Loan Ass'n,* 89 F.R.D. 1, 3 (E.D.Pa.1980) ...................22

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) .....................................17

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir.2001)....................................................................................12, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................................14, 20, 21

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).................................16

*Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988)..................................22, 23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) ................................................................................... passim

Fed. R. Civ. P. 23(b)(3)............................................................................... passim

Fed. R. Civ. P. 23(e)(2) ...............................................................................12

## INTRODUCTION

Plaintiff submits this Memorandum of Law in support of his Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiff's Motion for Final Approval"). For purposes of settlement only, Defendants do not oppose this motion. Other than for settlement purposes, Defendants do not concede in any way that class or collective action certification is appropriate in this case. The parties' $900,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval.  Plaintiff seeks an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement and Release ("Settlement Agreement"); and (3) approving the FLSA Settlement.

On January 2, 2020, the Court took the first step in the settlement approval process by granting preliminary approval and directing that notice be mailed to class members. Docket No. 102. The members of the class have been notified of the terms of the settlement and their right to opt out of, or object to, it.  For the reasons stated below, the Court should grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Procedural History

On May 11, 2017, Plaintiff filed the instant lawsuit seeking to bring class and collective action claims against Defendants pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including allegation of unpaid regular and overtime wage claims. The Complaint alleged that Defendants failed to pay Plaintiff and other hourly, non-exempt employees the proper regular and overtime wages due to time shaving, and failed to provide all non-exempt hourly employees with proper wage statements and wage notices, among other claims. Plaintiff sought to

1

recover, on behalf of himself and others he claims were similarly situated, unpaid wages and overtime premium, liquidated damages and penalties, and further requested to be awarded injunctive relief and attorneys' fees and costs.

On August 31, 2017, Defendants filed their Answer to the Complaint. In addition to numerous informal telephone conferences for settlement, the parties participated in a Court-Ordered mediation with the S.D.N.Y. mediation program on December 13, 2017, which was unsuccessful. On January 9, 2018 the Parties participated in an initial conference and pre-motion conference regarding Plaintiff's anticipated motion for conditional collective certification and Defendants' anticipated motion for partial dismissal. On January 30, 2018, Defendants filed a motion for partial dismissal, which was fully briefed as of February 27, 2018 and denied on July 25, 2018. On March 1, 2018, Plaintiff filed a motion for conditional certification of a collective action, which was fully briefed as of March 26, 2018 and granted in part on July 25, 2018. Following additional information settlement discussions, on November 8, 2018, the parties informed the Court of their intention to engage in formal, private, class-wide mediation, and requested a stay of proceedings, which was granted on November 16, 2019.

## II.    **Overview of Investigation and Discovery**

Plaintiff conducted a thorough investigation of the claims and defenses, focusing on the underlying merits of Class Members' claims, the damages to which they were entitled, if any, and the propriety of class certification.  Plaintiff's counsel conducted in-depth interviews with Named Plaintiff to determine the hours he worked, the wages he was paid, the nature of his daily activities, and other information relevant to his claims.

Through discovery produced in connection with mediation, Plaintiff's Counsel received and reviewed tens of thousands of pages of class wage-and-hour records, which specifically

included employee time cards, payroll records, paystubs and wage notices for all non-exempt employees who were employed by Defendants at their Essen stores located at 60 Madison Avenue, New York, New York 10010 and 160 Varick Street, New York, New York 10013 during the relevant six-year statutory period.

Based on this discovery, Plaintiff was able to perform potential damages calculations and assess his claims, the class' claims, and Defendants' defenses. Prior to the January 16, 2019 private mediation, Plaintiff's Counsel performed a damages calculation for the following claims: (i) unpaid regular wages due to time shaving, (ii) unpaid overtime premium due to time shaving, and (iii) violations of the Wage Theft Protection Act. After investigating the claims of the Plaintiff and the Class, in Plaintiff's and Class Counsel's view, it became apparent that certain claims carried significant risk, may be defeated, or at most, significantly weakened, for the following reasons:

(I)    Plaintiff and Class Members brought a time shaving claim alleging that Defendants would require them to work during meal breaks and were effectively "on call" throughout the entire course of their breaks. Additionally, they claimed that in spite of being required to work through their meal breaks, Defendants would nonetheless deduct thirty (30) minutes for a meal break from their payroll each workday, resulting in a three (3) hour deduction from Plaintiff's and Class Members' individual counts of weekly hours worked. This claim is highly risky since the time shaving cannot be proven on the documents alone and is reliant on witness testimony. As such, this claim becomes a factual debate between Plaintiff and Class Members and Defendants.

(II)    Plaintiff and Class Members also brought an overtime claim alleging that at all times Defendants failed to pay them the proper overtime rate of one and one-half times the regular rate of for each hour worked in excess of forty (40) hours per workweek. The documents produced by Defendants in advance of the parties' private mediation indicated that Plaintiff, and presumably

other Class Members, was scheduled to work for a total of fifty-two and a half (52.5) hours per week, but was paid on a straight-time basis for all such hours. This claim is risky however, as Defendants may argue that there was understanding between Defendants and Class Members that they would be compensated accordingly, or that Plaintiff's schedule was not indicative of the large majority of Class Members who were scheduled to work for forty (40) or fewer hours per workweek.

(III)   Plaintiff and Class Members also brought statutory claims with allegations that Defendants failed to provide proper wage notices and wage statements. However, under the Wage Theft Protection Act, there are no statutory penalties for a failure to provide wage notices or wage statements if no other wage and hour violations existed, *i.e.* failure to pay proper regular and overtime wages due to time shaving.

The risks on the substance of the claims and the challenges with achieving commonality on the class claims make this an outstanding recovery for the Class, where each person will obtain, on a gross, per capita basis, almost $1,714 per person before fees and expenses are deducted, without class members having to endure litigation. Based on the Claims Administrator's calculations of the actual settlement allocations to 261 Class Members, the highest settlement payment will be approximately $5,806.07, and the average settlement payment will be approximately $1,096.05. *See* Affidavit of Angela Ferrante, ¶ 14. While Plaintiff believes that he could ultimately establish Defendants' liability on some of his claims, to do so would require significant factual development. Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs heavily in favor of final approval.

4

**III.**     <u>**Settlement Negotiations, Further Discovery & Preliminary Approval**</u>

The Parties engaged in extensive negotiations.  The formal parameters of the settlement were the result of contentious negotiations.  The parties engaged in numerous informal telephone conferences for settlement, a Court-Ordered mediation session with the S.D.N.Y. mediation program, and an all-day private mediation with Martin F. Scheinman, Esq., of Scheinman Arbitration & Mediation Services on January 16, 2019, all of which were unsuccessful and did not result in a settlement in principle.  During the months after the January 16, 2020 private mediation, however, the parties continued to discuss the possibility of settlement and ultimately negotiated a settlement in principle that would cover two Essen store locations on or about April 30, 2019. The terms of such settlement were negotiated at length and ultimately memorialized in the Settlement Agreement, which was fully executed on September 9, 2020. If the parties had not been able to settle amicably, the parties would have engaged in further discovery, conducted depositions, retained and deposed experts, Plaintiff would have moved for re-certification of the conditional collective under 29 U.S.C. § 216(b) and class certification pursuant to Fed. R. Civ. P. 23, and Defendants would have moved for de-certification of the FLSA collective and summary judgment, each at a significant cost to the parties.

Because of the uncertainty of Plaintiff's legal position and the uncertainty of obtaining class certification and maintaining class certification through trial, the Parties agreed to the settlement of $900,000.00.  Class Counsel then prepared and submitted a preliminary approval motion, which was approved by the Court on January 2, 2020.

**SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION**

| Category | Settlement Term | Remarks |
|---|---|---|
| Gross Settlement Fund | $900,000 | The Fund covers all of Defendants' obligations under the settlement (exclusive of payroll taxes ordinarily borne by the employer on any W-2 payments under the settlement), including but not |

| | | |
|---|---|---|
| | | limited to any attorneys' fees and costs, class members' awards, and service awards to the Plaintiffs, if any. This does not include administration fees, which are to be paid separate from and in addition to the Gross Settlement Fund. |
| Attorneys' Fees | 1/3 of the Fund, $300,000 | Class Counsel has filed a motion for approval of attorneys' fees and reimbursement of expenses simultaneously with this motion. |
| Costs & Expenses | $8,932.42 | Filing Fee, Translation Fees, Depositions, Transcripts, and Mediation Fees, including refreshments for all parties during the mediation session. This amount represents the total amount of out-of-pocket expenses accrued by Class Counsel to litigate the two settlements reached by Plaintiff and Defendants to resolve the claims of the *Amici* Class and the *Madison 27* Class.[1] |
| Administration Fees | $37,500 | Admin. Fees are comparable to admin. fees usually paid to the settlement administrator in similar class settlement administrations with similar class sizes. Administration Fees are to be paid separate from, and in addition to the Gross Settlement Fund. |
| Service Awards | $10,000 | One $10,000 service award for the Named Plaintiff for his assistance to Class Counsel and service on behalf of the Class. Class Counsel has filed a motion for approval of this service award simultaneously with this motion. |
| Reserve Fund | $10,000 | A contingency fund is set aside from the Gross Settlement Fund to cover any errors and/or omissions in the calculations of the class members' individual allocations. Any unused portion of the Reserve Fund will be reallocated to the class members who do not opt out. |
| Reversion | Is there any reversion? | Yes. Any uncashed settlement checks or checks for a service award not cashed or deposited within one hundred and twenty (120) days of the mailing date (the date posted on the checks) shall be cancelled. Within thirty (30) days of the date on which sch checks are cancelled, all funds remaining in the escrow account set up by the Administrator to hold the Gross Settlement Fund shall be returned to Defendants' counsel, in accordance with the Settlement Agreement § 3.1(E). |

---

[1] For the avoidance of any doubt, this amount need only be paid *once* by Defendants to reimburse Plaintiff's Counsel for the costs they accrued while litigating this case and in reaching the two settlements made on behalf of the *Amici* Class and the *Madison 27* Class.

| Claims Made / Opt-out basis | Are class members required to file a claim form to receive a payment? | No. This is not a claims-made settlement, meaning that class members are not required to submit a claim form to receive a payment. |
|---|---|---|
| Allocation Formula | How will the individual settlement allocations be calculated? | Each class member will receive a share of the Fund. After deductions for attorneys' fees and expenses, and a service payment, class members will be paid a proportionate share of the net settlement fund based on a formula taking into account the number of weeks worked for Defendants during the relevant period, as described in the Settlement Agreement § 3.5. |
| Release | What is the scope of the release? | Every class member who does not opt out will release Defendants from all New York wage and hour claims. Every class member who cashes his or her check will release Defendants from Fair Labor Standards Act claims. |

## ARGUMENT

## I. The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On January 2, 2020, the Court preliminarily certified the settlement class. The Court should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiff respectfully requests that the Court certify the following class for purposes of effectuating the settlement: Named Plaintiff and all hourly non-exempt employees employed by either or both Defendants at the two Essen locations located at 60 Madison Avenue, New York, New York 10010 and 160 Varick Street, New York, New York 10013 ("Covered Locations"), operated by 27 Madison Avenue Corp. and Ten Westside Corp., respectively, from May 11, 2012 to the date of preliminary approval, who do not opt out of the litigation. Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

7

or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that: "[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

## A. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs clearly satisfy the numerosity requirement as there are 525 class members.

## B. Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).

Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181. In Plaintiff's view, the required relationship between the claims of Plaintiff and those of the class clearly exists here.

This case involves numerous common issues. Plaintiff and the Rule 23 class members all bring common claims involving allegations that Defendants failed to pay Plaintiff and Class Members their proper regular and overtime wages due to time shaving, and failed to provide Plaintiff and Class Members with wage statements and wage notices in conformity with New York law. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, Slip Copy, 2011 WL 382200, at *2 (S.D.N.Y. January 21, 2011) (Rule 23(a)(2) satisfied where common issues included whether defendants violated wage and hour laws by failing to pay overtime and spread of hours pay, making deductions from plaintiff's and class members' pay, and failing to keep accurate records of time worked); *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), Slip Copy, 2009 WL 6615729, at *3 (S.D.N.Y. November 27, 2009) (commonality satisfied where common issues included "whether Defendant violated wage and hour laws by failing to pay overtime premium pay for hours [class members] worked over 40 in a workweek, and failing to keep accurate records of time worked").

## C. Typicality

Typicality is also satisfied. Typicality is satisfied "when each class member's claim rises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the

same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, Plaintiff's claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims.  Plaintiff and the Rule 23 Class Members performed the same or similar job duties as hourly, non-exempt employees employed at Defendants' Covered Locations at any time between May 11, 2012 and January 2, 2020. Plaintiff makes the same allegations regarding unpaid regular wages and overtime premiums.  Plaintiff and Class members further allege they were not provided proper wage notices and proper wage statements as required under the NYLL.  Because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims, Plaintiff satisfies the typicality requirement. *See Dorn v. Eddington Sec., Inc.*, 2011 WL 382200, at *2 ("Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiff's claims for overtime pay, spread of hours pay, and unlawful deductions arise from the same factual and legal circumstances that form the bases of the class members' claims."); *Clark*, 2009 WL 6615729, at *4; *Frank*, 228 F.R.D. at 182.

**D. Adequacy of the Named Plaintiff**

Named Plaintiff Pedro Uraga is an adequate class representative. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and … have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *see also Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y.

Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted). Here, Plaintiff satisfies the adequacy requirement because there is no evidence that Plaintiff and class members' interests are at odds – on the contrary, Plaintiff's interests are clearly aligned with the interests of the class. *See Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (finding adequacy requirement met where plaintiffs' interests were not antagonistic or at odds with those of class members); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *2 (S.D.N.Y. Aug. 23, 2010) (same); *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *2 (same).

**E. Certification Is Proper Under Rule 23(b)(3).**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

**1. Common Questions Predominate.**

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…. predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill*

*Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). Here, class members' common factual allegations and common legal theory – that all non-exempt, hourly workers were subjected to the same unlawful policies, and that all non-exempt, hourly workers failed to receive proper wage statements and notices – predominate over any factual or legal variations among Class Members. *See Clark*, 2009 WL 6615729, at *5 (common factual allegations and common legal theory predominated over factual and legal variations among Class Members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"). The only individualized issues pertain to the calculation of damages, and it is well-settled that individualized damages calculations do not defeat predominance. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis). Plaintiff therefore satisfies Rule 23(b)(3).

### 2. A Class Action Is a Superior Mechanism.

Plaintiff also satisfies the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring,

or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3). Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).  Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.") Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted). 1023 (9th Cir. 1998); *Diaz*, 2010 WL 5507912, at *3. Plaintiff and class members have limited financial resources with which to prosecute individual actions. Here, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience and fairness to all parties.

## II.   The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato*

*v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"). When, as here, "a settlement is negotiated prior to class certification…it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5. Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.[2]

**A. The Proposed Settlement Is Substantively Fair.**

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible

---

[2] Defendants deny Plaintiff's allegations and assert that they complied with all applicable laws and regulations at all times.

recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

## 1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with 525 putative class members with fact-intensive claims under both federal and state law. A complicated fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner, weighing in favor of final approval.

## 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, a third-party administrator, Arden Claims Service, mailed the Court-approved notices ("Notices") of the class and collective action and settlement to the class members. The Notices explicitly informed class

members of their rights and the procedures to participate in the NYLL and FLSA settlements. After receipt of the Notice, no class members have objected to the settlement and only one class member has requested to be excluded from the settlement.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).

The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal quotation marks omitted). The parties' discovery here meets this standard.  Class Counsel conducted in-depth interviews with the Named Plaintiff to determine the hours he worked, the wages he were paid, the nature of his daily activities, and other information relevant to his claims.  Plaintiff's Counsel obtained substantial amounts of data, including tens of thousands of pages of class wage-and-hour records, including employee time cards, payroll records, paystubs and wage notices, covering all non-exempt employees employed by Defendants at Essen Store Locations during the relevant six-year statutory period. Plaintiff and his Counsel performed detailed potential damages calculations based on the data that Defendants provided.

Following informal settlement discussions between the Parties, on May 20, 2019 the parties informed the Court of their settlement in principle, which was reached on or about April 30, 2019. Based on these circumstances, the parties were well-equipped to evaluate the strengths and

weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Diaz*, 2010 WL 5507912, at *5; *deMunecas*, 2010 WL 3322580, at *5 (approving settlement where plaintiffs had obtained discovery through an informal exchange of information and engaged in mediation); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *5 (S.D.N.Y. Jan. 6, 2010) (same). Therefore, this factor also weighs in favor of final approval.

**4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiff believes his case is strong, it is not without risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted). A trial on the merits would involve significant risk, as detailed in Section II, "Overview of Investigation and Discovery", *supra*.

Plaintiff's counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain

in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs heavily in favor of approval.

### 5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).

Even if preliminary class status is granted, the risk of maintaining that class certification through trial is also present, particularly in light of the *Dukes* and *Comcast* decisions.  Further, Defendants may argue on a decertification motion that individual questions preclude class certification. The claims at issue are vulnerable to a highly individualized analysis on a person-by-person basis, such as which class members were required to work through their meal breaks, , what their primary language is, and how many overtime hours, if any, were worked by each class member without proper premium compensation. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

### 6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7).

Defendants maintain that they are unable to withstand a greater judgment. For this reason, the parties agreed to a substantial payment plan, consisting of payments of $50,000 per month for six (6) months, and thereafter, $25,000 per month until the full balance of liability on the settlement amount is paid. However, even if Defendants were able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)).  Here, the Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, presumably several years from now, and which relief is not guaranteed due to the risks involved in proving liability and damages. Therefore, Defendants'

ability to withstand a greater judgment, if any, does not weigh against the fairness of the Settlement.

**7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The $900,000 settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiff succeeded on all claims at trial and survived an appeal. The highest individual allocation amount is $5,806.07, and the average settlement payment will be $1,096.05.  *See* Affidavit of Angela Ferrante, ⁋ 14. Given the inherent risks of litigation discussed above, in Plaintiff's counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiff would have achieved had he prevailed on all of his claims and survived an appeal due to Defendants' available defenses and current financial position.

Considering the significant risks of litigation and maintaining class certification described above, it is likely that the judgment, if any, after trial will be much less than the agreed-upon settlement amount. Here, on a gross, per capita basis, the per person award would be approximately $1,714 to each Class Member, before fees and expenses are deducted, without the class members having to do anything.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at

*12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertaties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

**B. The Proposed Settlement Is Procedurally Fair.**

**1. The Settlement Was the Result of Arm's Length Negotiation**

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations, and after experienced counsel had evaluated the merits of Plaintiff's claims. *See Diaz*, 2010 WL 5507912, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator); *deMunecas*, 2010 WL 3322580, at *4 (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or

20

collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiff conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the parties, including a Court-Ordered mediation session with the S.D.N.Y mediation program on December 13, 2017 and an all-day mediation with Martin F. Scheinman, Esq. of Scheinman Arbitration & Mediation Services on January 16, 2019. Class Counsel spent significant effort to achieve the $900,000 settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. Through discovery, Class Counsel obtained, reviewed, and analyzed tens of thousands of pages of class wage-and-hour records, including employee time cards, payroll records, paystubs and wage notices, covering all non-exempt employees employed by Defendants at Essen store locations in New York City during the relevant six-year statutory period. This comprehensive discovery enabled Class Counsel to perform class-wide damage calculations. The parties reached a settlement in principle on or about April 30, 2019. After four more months of litigation and negotiations, the parties reached and executed a detailed final settlement agreement on September 9, 2019, and submitted an addendum to such agreement on December 18, 2019. Lee Dec.at ¶ 13. At all times during the settlement process, the parties negotiated on an arm's-length basis. Lee Dec. at ¶14. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *deMunecas*, 2010

21

WL 3322580, at *4.

### 2. The Distribution of Class Notice Satisfied Due Process

Although only two hundred and sixty-four (264) of the five hundred and twenty five (525) Class Members received the class settlement notice by mail (approximately 51%), we believe that such result is adequate and satisfies due process. Moreover, similar deliverable rates have been approved in other class action settlements. *Carillo v. 27-39 East Rest Corp., et al.*, No. 13-cv-4491 (S.D.N.Y., Feb 2, 2015) (deliverable rate of 60% approved for final class fairness in restaurant case where many employees were transient and undocumented). While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008), citing *Wal–Mart*, 396 F.3d at 113–14.  Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988); *In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable.' *Id*. However, in this case, due to Defendants lack of contact information for 135 class members, and following a skip trace for 160 Class Members based on social security numbers by the Claims Administrator after which 33 Notices were able to be mailed, 261 class

members could not be mailed notices due to lack of current contact information. On the other end of the spectrum from mailed notice, in certain circumstances, Courts have held that notice by publication is the best notice practicable. *In re MetLife Demutualization Litigation*, 262 F.R.D. 205 (E.D.N.Y. 2009). In either scenario, Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice all meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.*, 87 N.Y.2d 566, 570-1, 633 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).Due process does not require actual receipt of the individual notice by each and every possible class member. *See In re Colt Indus.,* 155 A.D.2d at 157, 160, 553 N.Y.S.2d at 140, 142 (1ˢᵗ Dep't 1990) (approving notice by publication in two newspapers); *Agent Orange,* 818 F.2d at 168; *Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir. 1994) (holding class member bound by judgment although notice not received before opt-out date). However, for the avoidance of doubt, and in order to act as diligently as possible, and to provide the best notice practicable to class members, the Parties have agreed to ongoing posting of the Notice, in addition to the Claims Administrator's mailing of Notice, which has already occurred. This is being done to ensure the optimum likelihood that any possible employees of Defendants, for whom addresses were not provided or for whom Notices were returned as undeliverable, will be notified regarding the settlement and their rights thereunder, including being able to obtain their settlement payment from the Claims Administrator.

Continuing to post Notice during this period increases the possibility that individuals who failed to receive Notice by mailing will be able to notify the Claims Administrator in order to receive their settlement checks. Accordingly, the Court should find that at all times the efforts made by

the Claims Administrator to locate and notify Class Members were diligent and resulted in a reasonable and adequate distribution of the mailed Notice of the proposed class settlement to the Class.

### III. Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiff also requests that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). True to the opt-in procedure, only individuals who cash their checks will release their FLSA claims. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and

arm's-length negotiation involving vigorous back and forth. Lee Dec. ¶¶ 11-14. During the litigation, counsel highly experienced in wage and hour law represented Plaintiff and Defendants.

As of April 3, 2020, the deadline for class members to object to or opt-out of the settlement, no individual has objected to the settlement and only one individual has chosen to exclude themselves from the settlement.  Lee Dec. ¶¶ 20.

Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) certify the settlement class; (2) grant final approval of the Settlement Agreement as fair, reasonable, adequate and binding on all Class Members who have not timely opted-out; (3) approve the FLSA settlement; and (4) fully and finally dismiss the Litigation with prejudice.


Dated: March 31, 2020

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: */s/ C.K. Lee*
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*